**In the Matter of the Estate of CATHERINE E. TAYLOR,**
**(also known as Kathleen Taylor), Deceased**

Probate Action No. 9-1970

District Court of the Virgin Islands

Div. of St. Croix

March 14, 1973

———

BRYANT, COSTELLO & BURKE, ESQS., Christiansted, St. Croix, V.I.

YOUNG, *Judge*

### MEMORANDUM OPINION, ORDER AND JUDGMENT

This is, in essence, a probate matter which has blossomed into an action to quiet title. The decedent, Catherine Taylor (herein "Catherine"), left a will disposing of several parcels of real property. Among these was No. 15 Queen Street, Frederiksted. This has become the bone of contention, and its final disposition will require two documents of the Court. I will therefore enter a Judgment quieting title by adverse possession as against all claimants[1] and also enter an Order establishing the ownership interests of the various heirs and legatees, so that the probate matter may proceed.

The litigation arrived at this issue in the following way. Catherine died testate in 1968, and her will was admitted to probate early the following year. The attorney for the

———

[1] When it appeared that this case would require quieting title by adverse possession, appropriate notice was made by publication.

executor subsequently filed a Petition for Recognition of Devisees and Legatees, in which he concluded, inter alia, that the residuary legatee was entitled to a substantial interest in the Queen Street property. This petition was opposed by a group of the other beneficiaries, who urged that the specific donative clauses in the will, when properly construed, gave all of the decedent's interest in that property to them. No interest in that property, therefore, would remain to pass under the residuary clause.

I must agree with their argument, and I find that Catherine intended to leave all of her interest to the primary recipients. What made this issue a doubtful one was the language she used to express her intent. She left the Queen Street property to three of her brothers and sisters (or, if they were dead, to their children per stirpes) with the following description:

> . . . all my right, title and interest in and to the real property which I inherited from my father, which is located in the Virgin Islands . . . .

Catherine acquired her interest in a number of ways. She inherited a one-fifth of a one-third interest from her father, acquired a one-third by purchase and, as we shall see, obtained the remaining fractional interest of the entire fee by adverse possession. These facts could permit a restrictive construction of the clause above, as intending to convey to her siblings only the one-fifth of the one-third interest which Catherine inherited from her father. The remainder would then pass to the residuary legatee, as the attorney for the executor had originally proposed here.

I believe, however, that the better construction would take the phrase "which I inherited from my father" as describing the real property, and not as limiting the ownership interests to be bequeathed. Three reasons support this construction. First, it seems the most natural

and grammatical reading of the clause as a whole. Secondly, if only a partial interest were intended to be bequeathed by this specific clause, it would be strange not to have an equally specific clause disposing of the remainder. And third, if the clause was intended to describe the property rather than the partial amount of legal interest conveyed, its imprecision may be explained by the decedent's long absence from the islands and the fact that she made the will in New York with the assistance of a New York attorney who was not acquainted with property descriptions in St. Croix. She might then have forgotten the legal description of her properties, and used the phrase in question as a handy means of identifying this property and distinguishing it from other parcels which she acquired entirely with her own resources.[2] This explanation is bolstered by the fact that throughout the will no Virgin Islands parcel is given its legal description, but rather all are given similarly informal identifications. This may be contrasted with the decedent's property in New York—the city where she lived and which she presumably knew well—which was precisely identified in the will. I therefore find that all the decedent Catherine's interest in the Queen Street property has been bequeathed, under the clause in question, to the named beneficiaries.

It now remains to be determined just what interest Catherine possessed. I find that, after considering the following sequence of events, it was the full fee simple. The decedent's father, Christian Taylor, acquired his one-third interest pursuant to an adjudication of this Court. Estate of Henrietta Fredericks, No. 126-1937. He then died intestate in 1940, at which time the 1921 Code of the Mu-

---

[2] One might think it strange to consider "property" as having been inherited when in reality only a one-fifth of a one-third interest was so acquired. However, as we shall see below, Catherine and her mother treated the property as if it were exclusively theirs. Thus she probably did, and I so find, describe it as her "inherited property."

nicipality of St. Croix governed the descent of real property. Under Title II, ch. 16, § 1(1), Christian Taylor's interest was to be divided equally among his five children of whom Catherine was one. Beginning in 1940, therefore, each of Christian's five children had a present interest in the property. This present interest existed in spite of the statutory provision of dower for the widow, for two reasons. First, under the old Code, the widow would receive a life estate in only an undivided one-half interest of the lands of which her husband died seized of an estate of inheritance, thus leaving the children with title to the entire estate and possession as to the remaining one-half interest. Title II, ch. 11, § 1. Moreover, under section 6, the widow could simply occupy her portion of the land, or collect her one-half share of the rents, without having any dower lands specifically set aside and assigned to her. In this case, so far as I have been advised, there was no specific assignment of a one-half interest in the Queen Street property to the widow. This practice would have the effect of leaving the children not only their present interest, but also a voice in the management of the entire undivided estate (i.e., of Christian's entire one-third interest) such that they would simultaneously supervise the future interest which would revert to them on the widow's death.

 Under these circumstances, however, the children also became vulnerable to adverse possession beginning in 1940. This is clearly true as to their present interest, and I think it is true of their future interest as well. For the purpose of the doctrine of adverse possession is to quiet title to land after reasonable notice to the owner of the documented title, and since the present and future interests were not separated here, the children were on equal notice of any adverse claim against either. Similarly since the estate was not divided, they were at all times

empowered to take corrective legal action against the adverse claimant. Finally, since the children each had a voice in the management of the property, possession could be maintained adverse to their interests even without being adverse to the interests of the widow. This would take the form of denying some or all of the children a role in the management and a share of the rents, while at the same time recognizing these rights in the widow.

■■ I find that Catherine maintained such adverse possession against her siblings, and in consequence acquired their fractional interests for herself. Her possession was not adverse when the children first received their interests in 1940, but it became so at some time afterwards. The test for such adverse possession is set out in Prince v. Duvergee, 1 V.I. 425 (D.C.V.I. 1938) (Hastie, J.):

> [T]he original entry . . . [may have been] consistent with and in support of the cotenancy. But conduct by a tenant in possession such as plainly and openly shows that he is holding in his own right alone and in derogation of the common right will suffice to change the character of the possession. Ouster of co-tenants may be a proper inference from long continued exclusive possession and manifest claim of sole dominion without any accounting for profits or demand for contributions.

I believe that this test has been met here. Catherine began to pay all maintenance expenses without demanding contribution; she received all profits without disbursing them; she paid all real estate taxes herself; and she took on the sole management of the Queen Street property. I find that these practices were begun at some point before the death of the widow and, although not necessarily in derogation of her rights, were adverse to those of the other children and extinguished their rights after fifteen years. See 28 V.I.C. § 11. After the widow's death, and at the expiration of this period, Catherine thus acquired the remaining four-fifths of her father's one-third interest.

Once this conclusion is reached, the question of the acquisition of the remaining two-thirds interest is relatively simple. Catherine purchased an additional one-third by a quitclaim deed from David Henderickson. Even if she used some of the rental income for this purpose, the opportunity to demand an accounting passed along with the title through adverse possession. Only the last one-third then remains unaccounted for. As to this I find that Catherine's conduct, which adversely established title against her own siblings, was also sufficient to acquire the remaining interest from any and all outside parties (whoever they may be).

## JUDGMENT

For the reasons set forth above, it is hereby ORDERED, ADJUDGED and DECREED that at the time of Catherine Taylor's death on November 17, 1968, she possessed the fee simple to No. 15 Queen Street, Frederiksted, by virtue of inheritance and adverse possession.

## ORDER

For the reasons set forth above, it is further ORDERED that, for purposes of the present proceeding, Catherine Taylor bequeathed her entire interest in No. 15 Queen Street, Frederiksted, to the beneficiaries named in that clause of her will, and that no interest in that property will pass under the residuary clause.